IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiffs, | **4:13CR3115** |
| vs. | |
| JUSTIN LEE ORSTAD, | **MEMORANDUM AND ORDER** |
| Defendant. | |

Justin Lee Orstad ("Orstad") has filed a Motion for Compassionate Release (Filing No. 236). With some hesitancy, I will deny the motion.

First, there is no question that Orstad has exhausted his administrative remedies through the highest levels. (Filing No. 255; Memorandum from the Assistant Director and General Counsel of the Bureau of Prisons in Washington, D.C., to the Warden at FCI, Terminal Island, California.[1]) By email, counsel for the government has conceded the point. I appreciate counsel's candor.

---

[1] He described Orstad's condition as of July 22, 2020, this way:

> Mr. Orstad is a 53-year-old male with a medical history of hypertension, coronary atherosclerosis, esophageal reflux, obesity, vitamin D deficiency, hyperlipidemia, polyneuropathy, heart failure (mild), chronic obstructive pulmonary disease (COPD), muscle weakness (left side), major depressive disorder, antisocial personality disorder, and noncompliance with medical treatment. Mr. Orstad's medical conditions are considered chronic but stable. Mr. Orstad is independently mobile with the use of a manual wheelchair from which he can transfer in and out of and self-propel. He is also capable of ambulating short distances with the use of a walker. Mr. Orstad is

Second, after pleading guilty pursuant to a plea agreement that allowed Orstad to file a variance motion because of his "failing health" (Filing No. 115 at CM/ECF p. 4[2]), it quickly became apparent to me that Orstad was a "heavy hitter" when it came to drugs and guns despite being a very sick man. To be more precise, Orstad was a gun-toting drug dealer who sent a lot of dope from the State of Washington to Nebraska. (Filing No. 187.) With a criminal history of I[3] and a total offense level of 35 (after a 2-level variance the government conceded was appropriate because of a Guideline change), his prison range became 168 to 210 months. As noted above, he had horrible medical problems with heart and other ailments,[4] so I varied further

> independent with his Activities of Daily Living (ADLs) and Instrumental Activities of Daily Living (IADLs) such as bathing, dressing, grooming, transfers, feeding, toileting, using the phone, computer and TRULINCs, housekeeping, laundry, preparing meals outside of food service, medication management, and navigating the correctional environment. Mr. Orstad is currently housed in general population and is not assigned an inmate companion.

(Filing No. 255 at CM/ECF p. 2 (apparent typographical mistakes corrected).)

[2] The government did not agree with that variance motion based upon ill-health. It only agreed he could file it.

[3] His criminal history was troubling, but none of it could be counted.

[4] Looking back, the probation officer investigating the present motion observed: "According to the Presentence Report, Mr. Orstad has been dealing with major health issues for many years. The report indicates following quadruple bypass surgery two years prior. Mr. Orstad had one artery 60% closed and another 80% closed. This led to continued strokes, some which occurred on the brain stem. He reported his life expectancy to be approximately three years. Mr. Orstad further reported he broke his neck in 2003 incurring injuries to cervical disks C4-C7 and was currently disabled." (Filing No. 242 at CM/ECF p. 3.)

downward to the statutory minimum of 120 months. (*Id.*) On August 25, 2014, I imposed my sentence (Filing No. 190), observing in the Statement of Reasons that I granted his motion for variance due to ill health because the "[e]vidence is clear that his life expectancy is limited." (Filing No. 191 at CM/ECF p. 3.) He was 47 years of age when I sentenced him. He is now 53.

Third, fast forward slightly less than six years, and here is what the probation officer found, after first filing 681 pages of medical records (Filing No. 241), to wit:

> According to BOP medical records, Mr. Orstad is a CARE-3, chronic unstable and complex physical health case. His medical issues have continued throughout his incarceration. These issues have required multiple hospitalizations outside of the BOP medical facilities. Records confirm his long medical history of Coronary Artery Diseases (CAD), Status Post Coronary Artery Bypass Graft (CABG), several stent placements in Coronary Arteries and Myocardial Infarction (MI) Chronic Heart Failure (CHF), Blood Hypertension (HTN), Hyperlipidemia, Neck pain Cervicalgia, Right Hand Carpal Tunnel Syndrome, Obesity, Depression, Sleep Apnea, Chronic Obstructive Pulmonary Disease (COPD) and Gastro-Esophageal Reflux Disease (GERD).
>
> He has been issued a walker, wheelchair, and additional equipment to ease pain while walking and sleeping. Mr. Orstad is limited in exertion to less than one set of stairs before angina symptoms begin.
>
> On top of his persistent health issues, Mr. Orstad was confirmed positive for COVID-19 on April 28, 2020. He was asymptomatic throughout the positive phase and was considered a resolved case by May 10, 2020.
>
> Mr. Orstad has been prescribed and taken an extensive list of medications during his incarceration. Over the previous three months, his medication list includes:

3

> ALOH/MGOH/Simeth Liq (acid reflux), Furosemide Injection (diruetic), Prednisone (steroid), Tiotropium Bromide (bronchodilator), HandiHaler (bronchodilator), Ranolazine ER (chronic stable angina), Oseltamivir Phosphate (antiviral), Omeprazole (Proton-pump inhibitor), Metoprolol Succ XL (Beta blocker ), Isosorbide Mononitrate ER (heart-related chest pain), Eplerenone (diuretic), Budesonide/Formoterol (bronchodilator), Atorvastatin (chest pain reduction), Isosorbide Mononitrate (chest pain), Nitroglycerin (vasodilator), Senna (constipation), Tamsulosin (urinary retention), Cholecalciferol (vitamin D), Acetaminophen, Selenium Sulfide Shampoo/Lotion, Milk of Magnesia (stomach acid), Acetaminophen, and Aspirin.

(Filing No. 242 at CM/ECF p. 3.)

In short, Orstad is even worse now as compared to when I sentenced him. He is a wreck medically speaking. That said, he does not have much longer with the Bureau of Prisons, as he is set to be released on June 12, 2022.

Fourth, Orstad is confined at a low-security facility called Terminal Island. That place has had significant problems with COVID-19,[5] but things seem to have stabilized at that facility. As of August 11, 2020, there were 3 positive inmates, 6 positive staff members, 10 inmates had died, no staff had died, there had been 639 inmates who contracted the disease but recovered, and 17 staff members who had recovered. *See* Federal Bureau of Prisons, COVID-19 Coronavirus (search for "Terminal Island"). The probation officer checked the website a month ago, and found that "as of July 8, 2020, Terminal Island's current COVID-19 statistics are: six inmates confirmed positive, two staff confirmed positive, 10 inmate deaths

---

[5] COVID-19 is the disease, and SARS-CoV-2 is the virus (cause). *See* Naming the coronavirus disease (COVID-19) and the virus that causes it, World Health Organization.

caused by COVID-19, zero staff deaths, 663 inmates recovered, and 16 staff recovered." (Filing No. 242 at CM/ECF p. 3).

While Orstad has had COVID-19 but apparently recovered without significant symptoms, the science remains uncertain in three areas. Initially, no one knows for sure whether Orstad could be infected twice.[6] Moreover, there is a possibility that the underlying virus may lurk and the disease (COVID-19) may flare up again.[7] Still further, assuming that Orstad's prior sickness produced antibodies to the disease, it is unclear how long those last.[8] In short, there is no firm reason to believe that Orstad is completely out of the woods because he has apparently recovered from the disease. Nonetheless, it is good news that he recovered and that he was asymptotic. He is probably at a somewhat lesser risk than others who have not come down with the disease.[9]

Fifth, Orstad has done moderately well in prison. The probation officer who prepared the investigation gave the following details:

---

[6] "The immune response, including duration of immunity, to SARS-CoV-2 infection is not yet understood. Patients infected with other betacoronaviruses (MERS-CoV, HCoV-OC43), the genus to which SARS-CoV-2 belongs, are unlikely to be re-infected shortly (e.g., 3 months or more) after they recover. However, more information is needed to know whether similar immune protection will be observed for patients with COVID-19." Can people who recover from COVID-19 be re-infected with SARS-CoV-2?, CDC (August 4, 2020) (search "Transmission").

[7] *Id.*

[8] Dr. Anthony Fauci, director of the National Institute of Allergy and Infectious Diseases, stated on August 6, 2020, "We don't know what the duration of that is. There are varying levels of antibodies in people who recover, and what we're following is how long they last. Some people find that it doesn't last very long."

[9] *See, e.g.*, Apoorva Mandavilli, Can You Get Covid-19 Again? It's Very Unlikely, Experts Say, *The New York Times* (July 22, 2020).

> According to BOP records, Mr. Orstad completed his GED during his first year of incarceration. He is currently involved in adult continuing education courses to occupy his time.
>
> He has a history of moderate disciplinary infractions on record in the BOP between January 2015 and March 2019. He has maintained clear conduct since March 26, 2019. Previous infractions include Possessing an Unauthorized item (x2), Disruptive Conduct-High, Refusing Work/Program Assignment (x3), Fighting with Another Person, Failing to Stand Count, and Possessing a Non-Hazardous Tool.

(Filing No. 242 at CM/ECF p. 4.)

Sixth, Orstad has a decent, but not great, release plan. The probation officer investigating this matter has stated:

> On July 6, 2020, the undersigned officer made telephone contact with Rebecca Hackett to discuss Mr. Orstad's request for compassionate release. Rebecca is a friend of Mr. Orstad, and currently holds the keys to Mr. Orstad's RV trailer, his proposed residence should release be granted. The trailer sits at 1000 Mountain River Trails Rd, Lot A1-2 in Cle Elum, WA. Rebecca has known Mr. Orstad as a neighbor for roughly ten years. She knew vaguely of Mr. Orstad 's [sic] ongoing health issues, stating "he has heart problems" and further that Mr. Orstad told Rebecca he "doesn't have long to live." She indicated the town has an urgent care clinic and physician's office a few minutes away, but the closest hospital is in Ellensburg, WA, roughly 25 miles away.
>
> Rebecca agreed to conduct a virtual inspection of Mr. Orstad's RV. The inspection was conducted via FaceTime technology on July 7, 2020. There was no evidence of contraband or weapons observed in plain view during the

6

> virtual inspection of the apartment. Mr. Orstad's trailer has ability to be connected to a truck trailer hitch to be moved. However, per Rebecca's report, it has been stationery for at least 10 years. The trailer has an additional grill area, roof, and generator shed built around and connected to it. The trailer includes a bedroom, bathroom, kitchen and dining area and has heating and air capabilities for year-round living. The trailer park also has public restrooms and showers available if resident trailers do not have them.
>
> Due to Mr. Orstad's release plans not being in the District of Nebraska, the probation office in the Eastern District of Washington must approve of the release address as they would provide supervision of him should the compassionate release be granted. On July 2, 2020, the Bureau of Prisons submitted a request to the Eastern District of Washington probation office to conduct their own relocation investigation to determine suitability for release.
>
> On July 7, 2020 the Eastern District of Washington completed their investigation to determine if Mr. Orstad's release address was suitable. They corroborated the same information as the undersigned officer and determined the release address was acceptable. They agreed to provide supervision of Mr. Orstad should the sentencing court grant compassionate release. Furthermore, they did not feel the need to add any special conditions at this time.

(*Id.*)

Seventh, to make things more difficult, Orstad has a felony drug case pending in Washington. (Filing No. 242 at CM/ECF p. 2.) The offense occurred on August

7

9, 2013. The arrest warrant was reissued on February 6, 2020. However, counsel for the government[10] has advised defense counsel and me that:

> I was able to reach the state prosecutor [name redacted by Kopf]. He said they likely would not extradite for that charge from California. He said that if I would send them a letter on our letter head describing his medical issues, he would cancel their warrant and issues [sic] a summons for Orstad to appear instead. I'll email that letter to them if the decision is made to release him. [The prosecutor] said that depending on Orstad's criminal history, the most Orstad would be facing is up to two years imprisonment, but [the prosecutor] doubts that will happen.

(Filing No. 256.)

Orstad also has three active bench warrants, two for failure to appear regarding charges of third-degree driving under suspension and the other charge of violating a no-contact or protection order. While it is not entirely clear, it appears that these cases are misdemeanors. These charges all occurred in 2013 according to the previous presentence report. (Filing No. 187 at CM/ECF p. 17.) Again, with the help of counsel for the government, we know that the State of Washington has elected not to file a detainer for Orstad and would not extradite him from California for these charges. (Filing No. 257 at CM/ECF p.5)

Eighth, Orstad has a history of substance abuse including cocaine, marijuana, and pain pills. Some of that history is remote. He has not taken part in any drug treatment or education while in the BOP. (Filing No. 242 at CM/ECF p. 2.) His failure to do so is concerning, particularly given his prior abuse of Oxycontin and his present medical condition.

---

[10] Again, I compliment the government's counsel for his assistance and candor.

Ninth, Orstad has had a fraught relationship with a former significant other and children who carry his last name. "Mr. Orstad also has [an] active protection order against him, protecting Deborah [last name redacted], Bo Orstad, Justin Orstad, and Jody Orstad (this order is from King County in the Western District of WA. This order does not expire until 2/25/2050." (Filing No. 242 at CM/ECF p. 2.) This is concerning.

Tenth, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), a defendant may (after exhausting his administrative remedies) move for reduction of his term of imprisonment based upon "extraordinary and compelling reasons." The court, after considering the factors enumerated in 18 U.S.C. § 3553(a), may the grant the motion if extraordinary and compelling reasons warrant the reduction and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. And pursuant to U.S.S.G. § 1B1.13(2), the court must also find that the defendant is not a danger to the safety of any other person or to the community.

Finally, I have very carefully considered all the relevant factors. I find and conclude that Orstad has failed in his burden of proof, and that is true even if the burden of proof is only the "preponderance of the evidence" standard. "Extraordinary and compelling" reasons are not present, and to the extent they are, they do not warrant a reduction of his prison sentence when balanced against (a) the extremely serious nature of the offense, (b) the big break I gave him when I previously sentenced him, (c) the relatively short time he will remain at the BOP; (d) his history of drug abuse (particularly prescription medication for pain) and his failure to seek drug treatment in prison; and (e) the restraining order that remains in effect until 2050.

Most importantly, and despite his extremely poor health, he continues to be an overall danger to the community. I am sympathetic to the fact that Orstad is in bad condition and must even use a wheelchair and walker to get around. Yet, I have sadly previously sentenced a poor fellow twice for three separate bank robberies

committed *while he was in a wheel chair*.[11] Remembering that Orstad was badly sick when he committed the instant offense, thus generating a large variance downward, I am not convinced that he will not reoffend and endanger others if released even earlier.

IT IS ORDERED that the Motion for Compassionate Release (Filing No. 236) is denied. The Motion to Restrict Access (Filing No. 251) is granted.

DATED this 12th day of August, 2020.

BY THE COURT:

Richard G. Kopf
Senior United States District Judge

---

[11] *United States v. Mason*, 4:07CR3013 & 4:01CR3055. Filing No. 34, the PSR in case number 4:07CR3013, describes Mr. Mason's conduct in all three cases; paragraphs 5-8 and 29 give the details.

10